```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND


IFCO SYSTEMS NORTH AMERICA,    *
INC.                           *
                               *
                               *
v.                             *  Civil Action No. WMN-09-2874
                               *
AMERICAN HOME ASSURANCE COMPANY *
                               *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM

Before the Court is Defendant's motion to dismiss. Paper No. 7. The motion is fully briefed. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion to dismiss must be converted to a motion for summary judgment. As the parties must be given notice of the conversion and a reasonable opportunity to respond to the converted motion, Defendant will be given 20 days from the entry of this Court's order to supplement its motion in accordance with this order. Plaintiff will then have 10 days in which to respond.

This action arises out of a coverage dispute between an insured party, IFCO Systems North America, Inc. (IFCO), and its insurer, American Home Assurance Company (American Home). Through a contractual agreement, IFCO employees provided pallet management and sorting services to Rite Aid Pharmacy (Rite Aid) at Rite Aid's distribution center in Aberdeen, Maryland. Rite

Aid alleged that over a five month period IFCO employees stole $1.5 million in goods from the distribution center. IFCO forwarded notice of Rite Aid's claim to American Home and asked that American Home provide coverage and defend and indemnify IFCO under its commercial general liability policy, no. GL 457-24-23, effective May 10, 2007 to May 10, 2008 (Liability Policy or Policy).

After investigating the claim, American Home sent a letter to IFCO declining coverage. IFCO disputed the declination of coverage and asked American Home to reconsider, which American Home refused to do. Rite Aid has since pressed its claim against IFCO, threatening to sue and to terminate its business relationship with IFCO if the two parties cannot reach a resolution. As a result, IFCO filed the present action against American Home alleging breach of contract and seeking a declaratory judgment of coverage under the Policy.

The coverage dispute centers on how the policy language should be interpreted. The Insuring Agreement in the Liability Policy provides that American Home "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." "Property damage" is defined to include "[l]oss of use of

tangible property that is not physically injured."[1] American Home contends the Policy is governed by Texas law, which, it argues, would not interpret the definition of "property damage" contained in the Policy to include a claim based on the taking of property through theft or conversion. Def.'s Mot. to Dismiss 7. IFCO, on the other hand, contends the Policy is governed by Florida or Maryland law and that under either state's law, property loss by theft or conversion is included within the Policy's definition of "property damage." Pl.'s Opp'n 11.

The Liability Policy does not contain a forum selection clause, so the Court must decide which state's law governs the interpretation of the Liability Policy. The parties agree that Maryland choice of law rules apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (noting that a federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum).

Maryland follows the rule of lex loci contractus, with a limited renvoi exception, to determine which state's law governs the terms of an insurance contract. Am. Motorists Ins. Co. v. ARTRA Group, Inc., 659 A.2d 1295, 1304 (Md. 1995). The lex loci contractus is the jurisdiction in which the contract was "made." Bethlehem Steel v. G.C. Zarnas & Co., 498 A.2d 605, 608 (Md.

---

[1] "Property damage" is also defined to include "[p]hysical injury to tangible property, including all resulting loss of use of that property." The interpretation of this portion of the definition, however, is not currently in dispute.

1985). The contract is made when "the last act is performed which makes the agreement a binding contract." Riviera Beach Vol. Fire Co., Inc. v. Fidelity & Cas. Co. of New York, 388 F. Supp. 1114, 1120 (D. Md. 1975) (citing Grain Dealers Mut. Ins. Co. v. Van Buskirk, 215 A.2d 467, 471 (Md. 1965)).

Once the Court determines the lex loci contractus, it must decide whether the renvoi exception applies. The Maryland Court of Appeals in ARTRA explained the renvoi exception:

> Under this exception, Maryland courts should apply Maryland substantive law to contracts entered into in foreign states' jurisdictions in spite of the doctrine of lex loci contractus when:
>
> 1) Maryland has the most significant relationship, or, at least, a substantial relationship with respect to the contract issue presented; and
>
> 2) The state where the contract was entered into would not apply its own substantive law, but instead would apply Maryland substantive law to the issue before the court.

659 A.2d at 1304. The Maryland Court of Appeals adopted this exception, in part, to discourage forum shopping. Id.

The parties in the present case dispute what constitutes the "last act" that made the Liability Policy binding, and thus dispute the lex loci contractus. American Home, citing to Rouse Co. v. Federal Insurance Co., 991 F. Supp. 460, 462 (D. Md. 1998), argues that generally the "last act" is delivery of the policy and payment of the premiums. Def.'s Mot. to Dismiss 4-5. IFCO, also citing to Rouse, argues, however, that if "the

4

insurance contract requires the countersignature of a representative of the insurance company to render the contract effective, the countersignature is the last act needed to form the contract."[2]  Pl.'s Opp'n 7 (citing Rouse, 991 F. Supp. at 462-63).  IFCO's argument is supported by Maryland cases determining that countersigning a policy was the "last act" when policies contained a provision requiring a countersignature before the policy would become valid.  ARTRA Group v. Am. Motorists Ins. Co., 642 A.2d 896, 900 (Md. Ct. Spec. App. 1994), rev'd on other grounds, 659 A2d 1295 (Md. 1995)(finding that because policy contained language requiring a countersignature before it could become valid, when the policy was countersigned in Illinois, Illinois became the location of the last act); Cromwell v. Royal Canadian Ins. Co., 49 Md. 366, 374-376 (1878)(finding that policy was made in Washington, D.C. when the countersignature, which was required by the terms of the contract to validate the policy, was affixed in that jurisdiction).

   The Liability Policy contains a provision that states "[t]his policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer . . . ." Liability Policy Form SIGNUJ.  This language is nearly identical to language found in other policies that courts have interpreted

---

[2] IFCO also offered alternative choice of law arguments if delivery of the policy and payment of premiums constituted the last act.  Pl.'s Opp. 5.

to require a countersignature as the last act.  See ARTRA Group 642 A.2d at 900 (finding countersignature requirement in language stating: "This policy shall not be valid unless countersigned . . . by a duly authorized representative of the company"); See also Rouse, 991 F. Supp. at 462 (finding countersignature requirement in language stating that policy "shall not be valid unless also signed by a duly authorized representative of the Company"). Therefore, to determine the lex loci contractus, the Court will need to determine where the Liability Policy was countersigned.

It appears, based on the arguments made in the parties' pleadings, that the choice of law issue is determinative. Each party has argued that the Court should apply the law of the state which would offer a policy interpretation favorable to its side. Nonetheless, these arguments are based on insufficient information and assumptions about the Policy. American Home has argued that Texas is the lex loci contractus because the Policy lists a Texas corporate address for IFCO, and so assumes the Policy was delivered to the IFCO offices in Texas.[3] Def.'s Mot. to Dismiss 5. On the other hand, IFCO has argued that Florida or New York is the lex loci contractus, because though the Policy does not on its face indicate the place of

---

[3] American Home's argument is based on the incorrect premise that delivery of the policy and payment of the premium were the last acts required for the Liability Policy to be valid.  As discussed above, the Court has determined that the last act required was the countersigning.

6

countersigning, "a common insurance industry practice" is for the countersigning to take place at the insured's broker's office, which the Policy lists with a Florida address, or the insurer's home office, which the Policy lists with a New York address. Pl.'s Opp'n 7.

It is clear that the countersignature requirement was satisfied, as evidenced by a signature made on the "Authorized Representative" line below the provision. Because the Policy and the pleadings do not indicate where the countersignature was made, however, the parties must provide this information to determine the choice of law.[4] In order for the Court to render a decision, it cannot rely on assumptions and guesses made by the parties, but needs concrete evidence. Because the decision as to whether to dismiss requires the Court to look at matters outside the pleadings, the motion is more properly one for summary judgment and the Court will treat it as such. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

---

[4] IFCO's Supplement to its Memorandum in Opposition to Defendant's Motion to Dismiss, Paper 13, was a surreply filed in violation of Local Rule 105.2a. The supplement and attached affidavit sought to introduce facts outside the pleadings. This is inappropriate on a motion to dismiss. The Court will deny IFCO's Motion for Leave to File a Supplement to Plaintiff's Opposition to Defendant's Motion to Dismiss, Paper 15, because it has determined that the location of the counter-signature is determinative and neither the supplement nor affidavit provide this information.

In converting the motion, the Court must provide the parties "a reasonable opportunity to present all material that is pertinent to the motion." See Id.; see also Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985). The Fourth Circuit has interpreted "reasonable opportunity" under Rule 12(d) as requiring that "all parties be given some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." Gay v. Wall, 761 F.2d at 177 (internal citations omitted).

Thus, the parties are hereby given notice that Defendant's Motion to Dismiss will be converted to a motion for summary judgment. American Home, as the insurer and party that presumably has access to this information, has 20 days from the date of entry of this Court's order in which to supplement its motion with evidence regarding the place of the countersignature and any additional legal argument in accordance with this Court's memorandum. IFCO will then have 10 days from the filing of American Home's supplemental pleading in which to respond. A separate order will issue.

/s/<br>
William M. Nickerson<br>
Senior United States District Judge

Dated: April 27, 2010