**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| **IFCO SYSTEMS NORTH AMERICA, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 1:09-cv-02874** |
| | ) **Judge William M. Nickerson** |
| **AMERICAN HOME ASSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

**AMERICAN HOME ASSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO ALTER OR AMEND JUDGMENT**

American Home Assurance Company (American Home) files this opposition to the Rule

59(e) Motion to Alter or Amend Judgment filed by IFCO Systems North America, Inc. (IFCO)

(DE 52).

**I.      INTRODUCTION**

IFCO requests that this Court vacate its June 23, 2011, Order (DE 51) granting American

Home's motion for summary judgment.  In the accompanying memorandum opinion (DE 50),

the Court declared that American Home has no duty to defend or indemnify IFCO under the

insurance policy at issue with respect to the underlying claim at issue.  The Court held that an

IFCO employee's alleged theft of goods from a distribution center operated by Rite Aid of

Maryland, Inc. (Rite Aid) does not constitute an accident under Georgia law for the purposes of

insurance coverage.  Accordingly, there is no "occurrence," defined in part as an accident, as

required under the policy to implicate coverage.  Absent an occurrence, IFCO is not entitled to

either a defense or indemnity from American Home.  IFCO asserts that the Court must

reconsider its decision under Fed. R. Civ. P. 59(e) based on an alleged change in Georgia law.

There has been no change in Georgia law, and IFCO's motion is nothing more than a restatement

of its prior position supported by arguments and evidence that it could have raised before the Court granted summary judgment.  Accordingly, IFCO's motion to alter or amend should be denied.

## II.    ARGUMENT

### A.    Rule 59(e) Standard

"In general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotes omitted).  A court may grant a motion under Fed. R. Civ. P. 59(e) under only three circumstances:  (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.  *Id.*  A party may not use a motion under the rule to raise an argument or novel legal theory the party could have raised before the court entered judgment.  *Id.*  "Where a motion does not raise new arguments, but merely urges the court to 'change its mind,' relief is not authorized."  *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 470 (D. Md. 2003).  To the extent a party relies on newly discovered evidence, the party must offer a legitimate reason for not presenting the evidence earlier.  *Pac. Ins. Co.*, 148 F.3d at 403.

### B.    IFCO is not Entitled to Relief Under Fed. R. Civ. P. 59(e)

Although IFCO claims that relief is appropriate under all circumstances permitted by Rule 59(e)[1], its motion is nothing more than a request that the Court "change its mind."  IFCO asserts that in a case decided in June, *American Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*[2], the Georgia Supreme Court changed Georgia law in favor of coverage.  According to

---

[1] *Plaintiff's IFCO Systems North America, Inc., Memorandum in Support of Rule 59(e) Motion to Alter or Amend Judgment* (IFCO Motion) (DE 52-2) at 2.

[2] 707 S.E.2d 369 (2011).

IFCO, the *American Empire* court embraced IFCO's position that whether there is an accident under a commercial general liability policy must be determined from the employer's perspective without regard to its employee's intent.  All the arguments in IFCO's motion flow from this premise, which is fatally flawed because the case did not change Georgia law.  The case affirmed existing Georgia law regarding whether faulty work can be an accident, circumstances unlike those at issue in this case.

Without its central premise, the motion simply restates IFCO's prior position supported by old arguments that have been rejected and two new arguments that have no merit.  For the first time, IFCO argues that the "separation of insureds" provision in the policy prevents the employee's intent from being imputed to IFCO.  It also now claims that it may be entitled to coverage because it may be able to demonstrate that the employee's acts were not intentional.  IFCO could have presented both these arguments to the Court before it entered judgment, and IFCO offers no explanation for having failed to do so.  In any event, neither argument has any merit.  For these reasons, the motion should be denied because IFCO does not demonstrate that altering the June 23, 2011 Order granting summary judgment is justified under the circumstances permitted by Rule 59(e).

> **1.** ***American Empire* is not an intervening change in controlling law under which IFCO is entitled to coverage for the negligent supervision claims.**
>
> > **(a)** ***American Empire* affirmed existing Georgia law rather than creating any new law.**

IFCO's motion is premised on a change in Georgia law that has not occurred.  IFCO asserts that in *American Empire*, the Georgia Supreme Court embraced IFCO's position that whether there is an accident for purpose of insurance coverage must be determined from the

employer's perspective without regard to an employee's intent.[3]   IFCO relies entirely on the last

sentence in the decision in which the court stated that a "deliberate act, performed negligently, is

an accident if the effect is not the intended or expected result; that is, the result would have been

different had the deliberate act been performed correctly."  707 S.E.2d at 752 (quotations marks

omitted).

        When this sentence and the decision as a whole are placed in context, it is clear that

*American Empire* affirmed existing law rather than creating any new law supporting IFCO's

position.  *American Empire* addressed whether a plumbing subcontractor was entitled to

coverage for a claim by a general contractor arising from the subcontractor's faulty work.  After

obtaining a default judgment against the subcontractor, the general contractor sought payment

from the subcontractor's insurer.  *Id.* at 370.  As in this case, the policy at issue provided

coverage for damages arising from an "occurrence" defined as an "accident," a term that was not

defined in the policy.  *Id.* at 371.  The *American Empire* court notes that under Georgia law an

"accident" is "an unexpected happening rather than one occurring through intention or design."[4]

*Id.* (quotation marks omitted).  The subcontractor's faulty work at three projects gave rise to

water damage to property other than the subcontractor's work.  The court held that there was an

accident "where faulty workmanship causes unforeseen or unexpected damage to other

property."  *Id.*  It concludes the opinion by noting:

> In reaching this holding, we reject out of hand the assertion that the acts of [the
> subcontractor] could not be deemed an occurrence or accident under the CGL
> policy because they were performed intentionally.  "[A] deliberate act, performed
> negligently, is an accident if the effect is not the intended or expected result; that

---

[3] IFCO Motion at 2-4.  *See also Plaintiff's, IFCO Systems North America, Inc., Memorandum in Opposition to Motion for Summary Judgment by American Home Assurance Company* (IFCO Opp'n) (DE 43) at 5-9, 15-18

[4] *See Memorandum of Law in Support of American Home Insurance Company's Motion for Summary Judgment* (AH Motion) (DE 36-1) at 7 (citing the same definitions).

is, the result would have been different had the deliberate act been performed
correctly."

*Id.* (citation and quotation marks omitted).  In other words, work intentionally but improperly

performed can give rise to an accident when the faulty work causes damage to property other

than the work itself.

With this decision, the *American Empire* affirmed existing law in Georgia concerning

when faulty work gives rise to an accident.  In *SawHorse v. Southern Guar. Ins. Co.*, a case cited

with approval in *American Empire*,[5] the Georgia Court of Appeals addressed whether there was

coverage for damage to a contractor's work, a second floor addition to a home, and damage to

property other than the work, the existing one-story structure.  604 S.E.2d 541, 544 (2004).

Because a general liability policy provides coverage for the risk that faulty workmanship will

cause injury to other property, the court held that there was an accident with respect to the one-

story structure.  *Id.* at 546.  That same year, citing *SawHorse*, the Court of Appeals held in

another case that there was no occurrence where faulty work, a failed retaining wall, caused no

damage to other property.  *Custom Planning & Dev. Inc. v. Am. Nat. Fire Ins. Co.*, 606 S.E.2d

39, 41 (2004).  The Court of Appeals reached the same conclusion two years later when it ruled

that costs to repair delaminating tiles were not covered because there was no evidence the tiles

damaged the building or any other property.  *McDonald Constr. Co. v. Bituminous Cas. Corp.*,

632 S.E.2d 420, 423-24 (2006).  In *Hathaway Dev. Co. v. Am. Empire Surplus Lines Ins. Co.*,

686 S.E.2d 855, 860-61 (2009), the Court of Appeals held that there was an accident with respect

to damage faulty work caused to other property, a decision the Georgia Supreme Court affirmed

in *American Empire*.[6]

---

[5] 707 S.E.2d at 371-72.

[6] *See also QBE Ins. Co. v. Couch Pipeline & Grading, Inc.*, 692 S.E.2d 795 (Ga. Ct. App. 2010).

In light of these prior cases and the decision itself, it is clear that *American Empire* does not change existing Georgia law.  The Georgia Supreme Court did not adopt IFCO's position that whether there is an accident must be determined from the employer's perspective without regard for an employee's intent.  The decision does not address intentional acts by employees and whether those acts are an accident from the employer's perspective.  It says nothing about from whose perspective an accident must be determined.  The court does not hold, as IFCO claims, that any intentional act that results in an unintended injury may be an accident.[7]  The court's decision narrowly focuses on when faulty work, a deliberate act incorrectly performed, may give rise to an accident.[8]  An intentional act such as theft is not analogous to faulty work because any harm arising from theft is by definition intended.[9]  Unlike work, the deliberate act of a theft cannot give rise to an unintended or unexpected result.

> **(b)      There is no coverage for the negligent supervision claims because theft is not an accident implicating coverage.**

Based on the false premise that *American Empire* changed Georgia law, IFCO argues that there is an accident from its perspective with respect to the underlying negligent hiring and supervision claim.[10]  Because the premise is false, the argument fails for the same reasons this Court recognized when it rejected the same argument in opposition to American Home's motion for summary judgment.[11]  *American Empire* did not disturb the holdings in *O'Dell v. St. Paul*

---

[7] IFCO Motion at 8.

[8] Notably, consistent with the lower courts, the Georgia Supreme Court does not find that the intentional act itself, the work, is an accident.  It holds that damage to other property arising from work improperly performed may be an accident.

[9] AH Motion at 8-9 (noting that under both Georgia and Maryland law, conversion and theft require the intent to do harm).

[10] IFCO Motion at 3-6, 8.

[11] *See* IFCO Opp'n at 5-9 (arguing that the alleged thefts were accidents from IFCO's perspective).

*Fire & Marine Ins. Co.*[12] and *Presidential Hotel v. Canal Ins. Co.*[13] that there is no accident from the employer's perspective where an employee commits an intentional act, even when there is a claim of negligent hiring, supervision or retention.[14]  An insurance policy that covers only "accidents" does not "extend to negligence claims where the insured-employer's alleged negligence is related to the intentional acts of an employee."[15]  As this Court correctly found, "the causes of action in the underlying dispute, including Rite Aid's claims for negligence and negligent hiring, are all premised upon the alleged conversion of Rite Aid goods by an IFCO employee."[16]  Because the claim is "entirely premised upon an event that does not constitute an 'occurrence'," there is no coverage for the underlying claims.[17]

The fact that IFCO's liability may arise from its failure to adopt or enforce policies to prevent theft does not change the outcome.  For the first time, IFCO claims that it can only be found liable to Rite Aid "due to the alleged negligent creation or enforcement of policies and

---

[12] 478 S.E.2d 418 (Ga. Ct. App. 1996).

[13] 373 S.E.2d 671 (Ga. Ct. App. 1988).

[14] *See also SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210 (11th Cir. Ga. 1999).

[15] *Memorandum* dated June 23, 2011 (Opinion) (DE 50) at 7 (citing *O'Dell*, 478 S.E.2d at 420).

[16] Opinion at 8.

[17] *Id.  See also* AH Motion at 10-13.   IFCO also argues that *American Empire* breathes new life into its argument in opposition to summary judgment that *Ameristeel Corp. v. Emp'rs Mut. Cas. Co.*, 7:96-cv-85 (HL), 2005 U.S. Dist. LEXIS 15715 (M.D. Ga. 2005), demonstrates that coverage is available under the policy.  IFCO Motion at 6-7.  Relying in part on *Ameristeel*, IFCO argued in its opposition that repeated exposure to conditions that result in property damage constitute an occurrence, even if those conditions involve intentional acts by an employee.  IFCO Opp'n at 9-12.  According to IFCO, *American Empire* vindicates its position that "repeated intentional acts committed by the insured's employees would constitute an occurrence under a CGL policy."  IFCO Motion at 7.  *American Empire* did not change Georgia law, and it did not address whether repeated intentional acts by an employee might be an occurrence.  *Ameristeel* offers no support to IFCO's position, regardless of whether *American Empire* changed Georgia law.  The court in *Ameristeel* addressed whether property damage, and therefore, an occurrence, took place during the policy period implicating coverage.  *See Reply in Support of American Home Assurance Company's Motion for Summary Judgment* (AH Reply) (DE 44) at 7-8.  The case does not address whether intentional acts, repeated or otherwise, by an employee or anyone else may give rise to an occurrence.

procedures which failed to guard against theft of the customer's property."[18]   IFOC asserts that

from IFCO's perspective its hiring and supervision practices were not intended to encourage or

permit theft.[19]   It could have raised this argument before the Court entered judgment, but it did

not do so and offers no reason for failing to offer an argument that clearly was available before.

Even if the argument were timely, it fails because the negligent hiring and supervision claim,

whatever the basis, is inextricably intertwined with the underlying intentional act, the alleged

theft of goods from Rite Aid.   It does not matter under Georgia law that IFCO did not

intentionally fail to adopt or enforce policies to protect against theft.   In addition, the failure to

adopt or enforce policies is not an occurrence.   An occurrence takes place when damage occurs,

not when the negligence giving rise to the damage occurs.   *Owners Ins. Co. v. James*, 295 F.

Supp. 2d 1354, 1362 (N.D. Ga. 2003).   The immediate cause of any injury that Rite Aid suffered

was the alleged thefts by an IFCO employee.   IFCO's failure to adopt or enforce a policy to

prevent theft did not cause any injury, and therefore, it could not give rise to an occurrence

implicating coverage under the policy.   The failure only made it possible for the theft to occur.   It

is the theft, an intentional act, that gave rise to the injury.

> **2.      IFCO's two new arguments could have been presented earlier and do
> not support its position.**

> **(a)      The "separation of insureds" provision does not prohibit an
> employee's intent from being imputed to the employer.**

For the first time, IFCO cites the "separation of insureds" provision in the policy as

support for its position that whether there was an accident should be determined from its

perspective alone.   This argument, which IFCO could have raised before the Court entered

judgment, has no merit.   The provision provides, subject to certain conditions, that the insurance

---

[18] IFCO Motion at 5.  *See also id.* at 8.

[19] *Id.* at 5.

applies as "if each Named Insured were the only Named Insured" and "[s]eparately to each insured against whom a claim is made or 'suit' is brought."[20]  Based on this language, IFCO claims that any intentional wrongdoing by an employee cannot be imputed to IFCO, because IFCO must be treated as the only insured when determining whether coverage is available.[21]  The provision, according to IFCO, serves as "an anti-imputation provision,"[22] and indicates "that the actions of co-insureds were not meant to be imputed onto other named insureds for the purpose of denying coverage."[23]

There is no reason why IFCO could not have raised this argument before the Court entered judgment in this case.  "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "Litigation is not a game of hopscotch. . . . . Litigants normally must frame the issues in a case before the trial court rules.   After that point, a litigant should not be allowed to switch from theory to theory like a bee in search of honey." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003).  IFCO's anti-imputation argument is based solely on the policy language.  IFCO clearly could have argued its interpretation of that language in opposition to American Home's motion for summary judgment.

---

[20] IFCO Motion, Exhibit A at AH C 000017.

[21] *Id.* at 5.

[22] *Id.*

[23] *Id.* at 6.  IFCO's argument regarding co-insureds does not make sense in this case.  The issue in this case involves whether the acts on an employee, Mr. Lycliter, can be imputed to an insured-employer, IFCO.  Mr. Lycliter is not seeking coverage under the policy, and there is no claim that he is an insured under the policy.  IFCO has never presented any evidence that Mr. Lycliter is an insured.  Accordingly, this case does not involve whether one insured is entitled to coverage based on the acts of a co-insured.

In addition to being untimely, the argument has no merit because the plain language does not support IFCO's interpretation.  The provision provides that the insurance applies separately to each covered person.  In other words, the insurer must evaluate whether coverage exists for each insured as if there are no other insureds, except to the extent there is policy language to the contrary.  The fact that coverage may or may not exist for one insured does not necessarily mean that coverage does or does not exist for another insured.  It does not follow from this language, as IFCO claims, that acts of an employee can ever be imputed to an insured employer.  It is possible to impute an employee's acts to an insured employer while separately evaluating whether coverage exists for two insureds.  The provision does not address whether and under what circumstances the acts of employees are imputed to an insured employer when determining if coverage exists for the employer.

> **(b)**    **There is no evidence from which a jury could reasonably conclude that Rite Aid's losses were accidental.**

IFCO also argues for the first time that Rite Aid's losses may have been due to negligence rather than theft.  No explanation is offered for why IFCO did not make this ineffective argument before the Court entered judgment even though IFCO could have done so.  According to IFCO, the "employee allegedly involved in the theft claims his involvement was accidental," and the police investigation "raise[s] the possibility that the actions of the one IFCO employee involved, Jeffrey Lycliter, were accidental."[24]  Citing the "Application for Statement of Charges" against Mr. Lycliter, IFCO claims he told police that Rite Aid merchandise was often mistakenly placed on IFCO trucks and returned when the merchandise was later discovered.[25]  IFCO further claims that efforts are being made in the underlying action to depose

---

[24] IFCO Motion at 9.

[25] *Id.* (citing Exhibit B at 3).

Mr. Lycliter, who IFCO expects to offer testimony consistent with his statement to police.  It is possible based on this evidence, IFCO speculates, that IFCO could be found liable to Rite Aid for failing to have procedures in place to prevent the accidental shipment of goods from the site.[26]

      IFCO clearly could have raised this argument in opposition to American Home's motion for summary judgment but failed to do so without any legitimate reason.  The argument is based Mr. Lyliter's statement in the "Application for Statement of Charges," a publically available document created in February 2008, that IFCO produced in discovery on January 6, 2011.  IFCO did not file its opposition to American Home's motion for summary judgment until February 7, 2011.  The document was clearly available to IFCO at that time, and it could have made this argument but did not do so.[27]  IFCO offers no reason, let alone a legitimate one, for failing to bring the document to the Court's attention prior to the entry of judgment.  IFCO only notes that it complained in its opposition that discovery was ongoing, no depositions had been taken, and IFCO had not fully developed the facts or its defenses.[28]  The argument, however, does not depend on a fully developed record; it depends on only one document that IFCO presents to the

---

[26] *Id.* at 10.

[27] The copy that IFCO produced to American Home is incomplete, but the document includes the statements to which IFCO now cites.  Further, the statement contained in the document is inadmissible hearsay on which IFCO cannot rely to oppose American Home's motion for summary judgment. "Hearsay, an out of court statement 'offered in evidence to prove the truth of the matter asserted,' is generally not admissible in federal court." *United States v. Wackman*, 359 Fed. Appx. 413, 416 (4th Cir. 2010) (citing Fed. R. Evid. 801(c), 802).  A party opposing summary judgment must identify specific facts other than allegations or denials in the pleading that show a genuine issue for trial. *Emond v. Corr. Med. Servs.*, No. JKB-10-1680, 2011 U.S. Dist. LEXIS 74660 at *10-*11 (D. Md. July 12, 2011).  To carry its burden, the "party must support its assertions by citing particular parts of materials in the record constituting admissible evidence." *Id.* at *11.

[28] IFCO Motion at 9 (citing IFCO Opp'n at 4.).  IFCO did not identify any particular depositions that it anticipated taking, any documents it hoped to obtain or any facts it desired to obtain.

Court for the first time with its motion to alter or amend.[29]  A Rule 59(e) motion is not intended

to "enable a party to complete presenting his case after the court has ruled against him." *Frietsch*

*v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) ("Were such a procedure to be countenanced,

some lawsuits really might never end, rather than just seeming endless.").

IFCO's untimely argument also has no merit.  Rite Aid's claims against IFCO are based

on the premise that the merchandise at issue was stolen, not accidentally lost.  In its complaint,

Rite Aid claims that Mr. Lycliter and an accomplice stole over $1.6 million in merchandise from

the Perryman distribution center.[30]  Rite Aid alleges a scheme in which Mr. Lycliter stole pallets

of merchandise on as many as twelve occasions using IFCO trucks to move the merchandise.[31]

Based on those allegations, it alleges a cause of action against IFCO for conversion.[32]

Conversion is an intentional tort where a person exerts ownership or dominion over personal

property of another in consistent with, or in denial of, that person's rights to the property.

*Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004).  At a minimum,

the person must have the intent to exercise dominion or control over the property inconsistent

with the other person's rights.  *Id.* at 836.  Rite Aid also alleges a cause of action for negligent

hiring, training, supervision and retention because IFCO did not "conform to standards of care in

its selection, hiring, training, supervision, and retention," giving rise to roughly $1.6 million in

---

[29] IFCO also cites a criminal investigation report indicating that Mr. Lycliter denied any involvement in theft of merchandise from Rite Aid.  *Id.* (citing Exhibit C).  This statement, which is inadmissible hearsay, does not support IFCO's claim that it is possible that IFCO may be held liable for the accidental loss of the Rite Aid merchandise.  If Mr. Lycliter's claim is true, IFCO would have no liability to Rite Aid.  IFCO did not convert the property if no IFCO employee was involved in taking it from the distribution center.  It also would not be liable for negligent hiring, training or supervision.  No matter how inadequate, IFCO's hiring, training and supervision of its employee would not have contributed to the loss if that employee had no role in bringing about the loss.

[30] AH Motion, Exhibit A at ¶ 3.

[31] *Id.* at ¶¶ 21-24

[32] *Id.* at ¶¶ 36-41.

damages due to theft.[33]  It alleges a cause of action for negligence because IFCO allegedly

breached its duty to use "proper staff and resources" and its duty "not to steal from Rite Aid."[34]

Rite Aid is not seeking to recover from IFCO losses arising from merchandise accidentally

placed on an IFCO truck and later returned.  It seeks to recover losses due to merchandise taken

from the facility and never returned.

## III.    CONCLUSION.

For the reasons stated above and in its memorandum in support of summary judgment,

American Home respectfully requests that the Court grant its motion for summary judgment,

dismiss all claims by IFCO, and enter a judgment declaring that American Home has no

obligation under the American Home policy to defend or indemnify IFCO with respect the

underlying Rite Aid claims.

Dated:  August 12, 2011.                        Respectfully submitted,


                                             /s/Paul D. Smolinsky
                                             Warren Lutz (No. 15556)
                                             Paul D. Smolinsky (No. 16029)
                                             JACKSON & CAMPBELL, P.C.
                                             1120 20th Street, N.W.
                                             Washington, D.C.  20036
                                             Tel.: (202) 457-1600
                                             Fax.: (202) 457-1678
                                             wlutz@jackscamp.com
                                             psmolinsky@jackscamp.com

                                             *Counsel for American Home Assurance Company*

---

[33] *Id.* at ¶ 29.

[34] *Id.* at ¶ 46.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 12, 2011, I caused a copy of American Home Assurance Company's Opposition to Plaintiff's Motion to Alter or Amend Judgment to be served via the Court's electronic case filing system to counsel of record for each party.


/s/Paul Smolinsky
Paul D. Smolinsky